[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the court is an appeal from a decision of the Zoning Board of Review for the Town of Glocester (hereinafter "Board"). The plaintiffs seek a reversal of the Board's April 22, 1993 decision denying a special exception to construct an electronic transmission tower. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-20.
Richard Gabriele, Carol Gabriele, and Christen Gabriele are the owners of property designated as Assessor's Plat 14, Lot Number 189, zoned Industrial. The parcel has a land area of approximately 3.23 acres and is located on Terry Lane with two existing structures currently on the lot. According to the record, on January 7, 1993 the Gabrieles and NYNEX Mobile Communication Company (hereinafter "plaintiffs") applied to the Board for a special exception to construct an electronic transmission tower. Article II, Section 12, Paragraph 13 of the Zoning Ordinance of the Town of Glocester authorizes electronic transmission towers in industrial zones by special exception.
NYNEX Mobile was formed in 1984 and is a subsidiary of NYNEX Corporation. NYNEX Mobile Communication Company is a prospective of the subject property. NYNEX currently has over 400 similar radio sites and over 370,000 customers in the New England and New York market. Their FCC license requires NYNEX to provide coverage in rural and metropolitan areas. The area NYNEX proposes to cover is currently unserved by their license. NYNEX customers in Rhode Island include senior citizens, college students, lawyers, doctors, and local police and fire departments.
The record reflects that on February 1, 1993, the Planning Board of the Town of Glocester held a preliminary hearing on the plaintiff's application and voted unanimously to approve the application. Five reasons were cited by the Planning Board in recommending acceptance of the application by the Board including:
 1. It is in an industrial zone.
 2. If it is going to be in Glocester, this is as good a place as any.
 3. There will be limited visual impact to the neighborhood.
 4. It may enhance public safety communications.
 5. There will be no charge to the Town for services.
On February 25, 1993, a public hearing was held before the Board on plaintiffs' application. Various witnesses testified in favor of and in opposition to the application both in person and by letter. The members of the Board asked several questions of NYNEX personnel present at the hearing regarding the impact of the proposed transmission tower on public health, safety, morals and welfare of the residents of the Town of Glocester. Upon motion, the plaintiffs' application was submitted to the Board for approval, for the following reasons:
 1. It will be located within an Industrial zone.
 2. If the Town sees fit, it will enhance public safety.
 3. It doesn't require Town services.
 4. It will generate much needed tax revenue for the Town
With the following stipulations:
 1. submit a proper plan showing access for emergency vehicles
 2. require a permanent generator with proper baffling for noise reduction to be installed at the complex on a pad, bolted down, with an above-ground fuel storage
 3. NYNEX is prohibited from renting space of the tower
 4. additional microwave dishes are prohibited from being added; only one (1) will be installed
 5. damage to abutting property owners will be repaired or paid for NYNEX.
Pursuant to R.I.G.L. § 45-24-19(3) and Article I, Section 5(B) of the Zoning Ordinance of the Town of Glocester, the concurring vote of at least four members of the Board is required to grant a special exception application. In this instance, two members voted to grant the special exception and three members voted to deny it. Accordingly, plaintiffs' application was denied. Having rendered its decision on February 25, 1993, the Board approximately two months later issued its written decision including its findings of fact on April 22, 1993. Those factual findings were:
 The applicant has not sufficiently demonstrated that the public convenience and welfare of the Town of Glocester will be substantially served by the construction of an electronic transmitter to facilitate cellular phone use in the area.
 The transmission tower would be detrimental to aesthetic values of the Town of Glocester, as it would stand a total of 180 feet, most of that above any surrounding tree cover, in order to transmit effectively.
 The tower would be an eyesore or at least impose a negative visual impact on the property surrounding the tower.
 Any benefit to the Town of Glocester's communications systems would be minimal and only incidental to the transmission tower's true benefit to NYNEX.
On March 31, 1993, plaintiffs thereafter filed an appeal.
The jurisdiction of this Court to review the decision of the Board is controlled by G.L. 1956 (1991 Reenactment) § 45-24-20(d) which provides as follows:
 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing the action of a zoning board of review, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). Substantial evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Apostolou v.Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978). This court has the latitude to determine after review of the entire record whether the evidence upon which the Board's decision was based "has probative force due to its competency and legality."Salve Reqina College v. Zoning Board of Review of the City ofNewport, 594 A.2d 878, 880 (R.I. 1991). This standard is employed to determine the reasonableness of the zoning board's action based on the evidence before it. United States v. Bianchi Co., 373 U.S. 709, 715, 83 S.Ct. 1409, 1414, 10 L.Ed.2d 652, 658 (1963). However, a reviewing court "is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find the board's decision was supported by substantial evidence in the whole record." Apostolou, 120 R.I. at 508, 388 A.2d at 825.
As a condition precedent to being granted a special exception, an applicant must establish that the relief sought is reasonably necessary for the convenience and welfare of the public. Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980). To satisfy the public convenience and welfare precondition, an applicant must demonstrate only that neither the proposed use nor its location on the site would have an inimical impact upon public health, safety, welfare and morals. Bamber v. ZoningBoard of Review of Town of Poster, 591 A.2d 1220, 1223-24 (R.I. 1991); Hester v. Timothy, 108 R.I. 376, 385-86, 275 A.2d 637, 642 (1971); Nani v. Zoning Board of Review of Smithfield,104 R.I. 150, 156, 242 A.2d 403, 406 (1968).
Traditionally, considerations of public health and safety are afforded the greatest weight when reviewing a zoning board's decision to grant or deny a special exception. Mendonsa v.Corey, 495, A.2d 257, 263 (R.I. 1985); Nani, 104 R.I. at 156, 242 A.2d at 406. The creation or preservation of an environment conducive to healthful living is an objective of comprehensive zoning. 1 Robert M. Anderson, American Law of Zoning, 3d., § 7.04 (1986). At the hearing plaintiff testified at length and was questioned by the Board regarding the effect on public health. The primary concern expressed by the Board was radiation safety of the microwave transmission. A NYNEX representative testified that "NYNEX calculates the radio frequency and submits the results to the Department of Health. . . The standard is designed for the amount of radio frequency you can safely have at the site as it relates to medical safety of people in the area." Hearing of February 25, 1993, Transcript at 8. NYNEX towers have been studied by both industry and private groups for any potential cancerous effect. Transcript at 11. NYNEX transmission equipment has been found safe enough to be placed on the rooftops of hospitals such as Newport Hospital. Transcript at 11. This court finds that the record reveals that a transmission tower would not be detrimental to public health in this instance.
Our Supreme Court has noted that the mere possibility that adjacent properties might be adversely affected should be guarded against by imposing appropriate safeguards and conditions, such as requiring a generator or the contract clause allegedly requiring NYNEX to stop use immediately if it is ever found to be unsafe, rather than by denying the owner an opportunity to use his property for an otherwise conditionally permitted use.Perron v. Zoning Board of Review of the Town of Burrillville,117 R.I. 571, 575, 369 A.2d 638, 641 (1977). A denial of an exception would be "deemed to have been arbitrary unless the Board after consideration found that it could not appropriately regulate such a use by the imposition of appropriate safeguards and conditions." Saini v. Zoning Board of Review of the City ofWarwick, 99 R.I. 269, 273, 207 A.2d 47, 49 (1965). In the Planning Board's recommendation to approve the electronic transmission tower, specific stipulations were suggested as safeguards and conditions. With such safeguards and conditions — an access route for emergency vehicles, prohibiting rental space on the tower, allowing only one microwave dish to be installed on the tower, and a generator with "proper baffling for noise reduction" and "aboveground fuel storage" — the Board could have guarded against any possible effect on adjacent property if evidence before it had revealed any. There is no conflicting testimony by a qualified expert contained in the record evidencing that the proposed tower would be inimical to the public health, safety, morals and welfare. Therefore the Board's conclusion is erroneous in view of the reliable and substantial evidence presented at the public hearing.
Public safety is an interest clearly within the police power, and within the delegations of zoning power. Issues of public safety especially as they relate to residents of Glocester were appropriately addressed at the hearing as well. Allegedly, NYNEX is currently working with the State Police to provide uninterrupted cellular coverage throughout the state for emergency response. However, testimony at the hearing indicated that "in and around the Chepachet/Glocester area, there isn't the quality of coverage for the [911] calls to make it to the state police from a mobile phone." Transcript at 3. In addition, cellular networks provide a viable back-up for local telephone networks, especially when the latter is inoperable due to inclement weather. Transcript at 4. Further, "[t]he site doesn't need any water, sewer or trash pick-up. There will be no increase in traffic, no interference with an airport or radio, television or public safety." Transcript at 4. Based on this evidence presented at the hearing, the Board had before it ample evidence that an electronic transmission tower would serve public safety interests.
Further, a zoning board of review may not deny a special exception to a permitted use based on the applicant's failing to prove that there is a community need for its establishment.Bonitati Bros. v. Zoning Board of Review of Woonsocket,104 R.I. 170, 171, 242 A.2d 692, 693 (1968). This court therefore rejects defendant's first factual finding that the plaintiffs failed to "sufficiently demonstrate that the public convenience and welfare . . . will be substantially served. . . ." Quite contrary, NYNEX representatives testified that their FCC license requires them to provide services to all areas. Services to areas not currently being served is the alleged goal of constructing the tower in this case. Thus, there is probative evidence in the record that granting a special exception for construction of an electronic transmission tower would serve the greater public welfare.
The public welfare with which the city and the courts must be concerned is the welfare of the whole community. A benefit or anticipated benefit to a special group within the city is not enough. Fogg v. South Miami, 183 So.2d 219, 221 (Fla. 1966). Therefore the Board's finding that the benefit to the Town of Glocester would be "minimal" and "incidental" to that of NYNEX is not supported by the record. The record reveals that improved communications for state and local police would serve the public welfare of the Glocester residents.
Furthermore, the findings of the Board articulate the fears expressed by neighbors concerning possible unfavorable conditions that might result if application for special exception permitting the establishment of an electronic transmission tower is granted. Such fears are not an adequate basis for denying the application.Perron v. Zoning Board of Review of the Town of Burrillville,117 R.I. 571, 575, 369 A.2d 638, 641 (1977).
Aesthetics is a legitimate goal of zoning within the realm of public welfare, but it is not sufficient to exclude a permissible use of property when it is the sole reason for exclusion. Diller Fisher Co. v. Architectural Review Bd., 246 NJ Super 362,587 A.2d 674 (1990); Art Van Furniture, Inc. v. Kentwood,175 Mich. App. 343, 437 N.W.2d 380 (1989). Frequently, the courts have discovered that a tendency to serve the safety interest enables a court to uphold a zoning decision which cannot be sustained solely on the basis of aesthetics. Anderson, supra § 7.10. However, denial of an application for reasons related to aesthetic considerations even though complied with safety requirements is not within the Board's authority. Messier v.City Council of the City of Central Falls, 90 R.I. 127, 133,155 A.2d 609, 612 (1959). In the present case, NYNEX presented to the Board evidence that it is complying with federal and state law and is willing to accommodate any additional requirements the Board may impose. The standard used is not one authorized by law. The Board does not claim that the plaintiffs are not willing or able to meet safety requirements.
Insufficient substantial evidence exists in the entire record to support the Board's denial of a special exception granting an electronic transmission tower. Finding that the tower would "impose a negative visual impact" is itself a value judgment. To be in harmony with the character of the neighborhood is without significance and constitutes nothing more than the Board's value judgment. Staller v. Zoning Board of Cranston, 100 R.I. 340, 344, 215 A.2d 418, 421 (1965). Although it may be visually intrusive, the record reveals that the tower would certainly promote public safety and welfare.
After a thorough review of the entire record, this court finds the Board's decision was arbitrary and capricious. InCitizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136, 153 (1971), the United States Supreme Court stated that to make a finding of arbitrariness, capriciousness or an abuse of discretion, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." In the instant case, the Board's decision denying the application for a special exception constituted an abuse of discretion since it was attributed essentially to aesthetic considerations and was not based on substantial evidence of the whole record in support of the findings. In effect, the Board "administratively vetoed [a] use conditionally authorized and thereby exceeded power conferred upon it by ordinance." Perron, 117 R.I. at 574, 369 A.2d at 640.
This court finds that a reversal, not a remand of the Board's decision is appropriate relief in this case. The authority of §45-24-20 should not be exercised in such circumstances as to allow another opportunity to present a case when the evidence was presented initially regardless of its adequacy. Roger WilliamsCollege v. Gallison, 572 A.2d 61, 62-63 (1990). The remand for further proceedings should be based upon a genuine defect in the proceedings, which was not the fault of the parties seeking the remand. See, e.g. Kraemer v. Zoning Board of Review of Warwick,98 R.I. 328, 201 A.2d 643 (1964); Center Realty Corp. v. ZoningBoard of Review of Warwick, 96 R.I. 482, 194 A.2d 671 (1963). Of course, a remand is also in order when there is no record of the proceedings upon which a reviewing court may act. Holliston SandCo. v. Zoning Board of Review of North Smithfield, 98 R.I. 93,200 A.2d 1 (1964). In the case at bar, a full evidentiary presentation was made by the plaintiff concerning all relevant issues at the public hearing. It is therefore improper to remand to the Board the denial of the special exception since inadequate evidence was presented to support the denial initially. RogerWilliams College, 572 A.2d at 63.
Accordingly, for the reasons herein above set out, the February 25, 1993 decision memorialized in the April 22, 1993 written decision of the Board are reversed, and the plaintiff's application for a special exception is hereby granted.
Counsel shall submit the appropriate judgment for entry.